# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
### ***

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

BRIAN WRIGHT, *et al.*,

     Defendants.

Case No. 2:14–cr–357–APG–VCF

**REPORT & RECOMMENDATION**

MOTION TO SUPPRESS (#100)

  Before the court is Mr. Wright's Motion to Suppress (#100). The government opposed (#120). Mr. Wright filed a reply (#129) and two surreplies (#138, #139). For the reasons stated below, Mr. Wright's Motion to Suppress should be denied.

## DISCUSSION

  Mr. Wright's filings presents five questions: (1) whether the court should conduct a *Franks* hearing; (2) whether Mr. Wright was unlawfully arrested; (3) whether the search warrant was sufficiently particularized; (4) whether Mr. Wright is entitled to an evidentiary hearing; and (5) whether the court should consider Mr. Wright's supplemental briefs. Each question is addressed below.

  **A.** ***Whether the Court Should Conduct a* Franks *Hearing?***

  The first question presented by Mr. Wright's motion is whether the court should conduct a *Franks* hearing. The court's analysis begins with the governing law.

  1. <u>Legal Standard</u>

  In *Franks v. Delaware*, 438 U.S 154 (1978), the Supreme Court established a two-prong test for overturning a magistrate judge's probable cause finding. First, the there is a "presumption of validity with respect to the affidavit supporting the search warrant." *Id*. at 171. Second, a defendant is entitled to an

evidentiary hearing on the validity of the affidavit only if he can make a "substantial showing" that: (1) the affidavit contains intentionally or recklessly false statements or misleading omissions and (2) the affidavit cannot support a finding of probable cause without the false information or with the misleading omissions. *Id*. at 155–56.

The Ninth Circuit articulated five requirements that a defendant must satisfy to warrant a *Franks* hearing: (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; (5) the challenged statements must be necessary to find probable cause. *United States v. Perdomo*, 800 F.2d 916, 920 (9th Cir. 1986) (citing *United States v. Dicesare*, 765 F.2d 890, 895 (9th Cir. 1985)).

This means that a defendant must show that the affidavit could not support a finding of probable cause even if it were purged of its falsities and supplemented by the omissions. *See United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985) (citing *Franks*, 438 U.S. at 171–72). A judge's probable cause determination is accorded "significant deference," *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995), and will be overturned only if it is "clearly erroneous." *Stanert*, 762 F.2d at 778. In making this determination, the court is "limited to the information and circumstances contained within the four corners of the underlying affidavit." *Id*. The duty of a reviewing court is to ensure that the magistrate judge had a "substantial basis" for concluding that probable cause existed. *Gates*, 462 U.S. at 238 (internal quotations omitted).

/// /// ///

/// /// ///

/// /// ///

2

2.    Analysis

Mr. Wright's motion does not satisfy this standard. First, Mr. Wright bears the burden of establishing standing, *see Minnesota v. Carter*, 525 U.S. 83, 83 (1998) (citation omitted), and it is not clear that he has established standing to challenge the search.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" U.S. CONST. amend. IV. Because the Fourth Amendment protects "people, not places," *see Katz v. United States*, 389 U.S. 347, 351 (1967), a person claiming a Fourth Amendment violation must, as an initial matter, demonstrate a "legitimate expectation of privacy" in the place searched or the thing seized. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).

Here, the assertions in Mr. Wright's motion that are relevant to standing are conflicting. On the one hand, Mr. Wright asserts that he "was nothing more than an over night guess [*sic*]" at 8102 Yellow Daisy Avenue. (Doc. #100 at 4). This assertion militates in favor of a finding that he has standing to challenge the search. It is well settled that overnight guests have "legitimate expectation of privacy." *See United States v. Gamez-Orduno*, 235 F.3d 453, 458 (9th Cir. 2000).

However, Mr. Wright's assertion that he was an overnight guest is conclusory and should be discounted. *See United States v. Balcar*, 141 F.3d 1180, 1180 (9th Cir. 1988) ("None of these conclusory arguments are discussed in any depth and we thus decline to address them."). Additionally, the gravamen of Mr. Wright's motion is that the government lacked probable cause to connect him with the premises searched. He repeatedly distances himself from the premises, arguing that (1) his "name was not on the lease nor was any bills [*sic*]" in his name and (2) "[a] drivers [*sic*] license being sent to a residence does not legally mean that is wright's [*sic*] address." (Doc. #100 at 7, 8).

3

In any event, if Mr. Wright has "a legitimate expectation of privacy" in 8102 Yellow Daisy Avenue, then the basis of his motion—(*viz.*, that the government lacked probable cause to connect him with 8102 Yellow Daisy Avenue)—fails. As detailed in the search-warrant affidavit, several facts connected Mr. Wright to 8102 Yellow Daisy Avenue and provided the government with probable cause to search the premises. For instance, the confessed robber expressly implicated Mr. Wright, a records check connected Mr. Wright to 8102 Yellow Daisy Avenue through his girlfriend, Mr. Wright's indicted co-conspirators' vehicles had parked at 8102 Yellow Daisy Avenue, brand new cars appeared in the driveway shortly after the alleged robberies, and items belonging to Mr. Wright's girlfriend were found in the home of one of Mr. Wright's indicted co-conspirators.

The arguments that Mr. Wright offers to invalidate the judicial officer's probable-cause finding are unavailing. He contends that "there was no reason or probable cause to run checks through DMV or run checks on names that have nothing to do with the robberies or the investigation." (Doc. #100 at 6). However, the government does not require probable cause to "search" its own records. *See, e.g.*, *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1150 (9th Cir. 2007) ("[E]very circuit that has considered the issue in a precedential opinion has held that license plate checks do not count as searches under the Fourth Amendment.").

He contends that the search-warrant affidavit is defective because it contains hearsay. *See* (Doc. #100 at 7) ("A co-conspirator's hearsay statement's [*sic*] may not be admitted or used against the accused for no purpose whatever, unless made during and in furtherance of the conspiracy. [. . .] [T]here was no independent evidence, and no one at any of the robberies ever reported anyone els [*sic*] at a crime scene."). However, the Federal Rules of Evidence, including the rule against hearsay, do not apply to warrant proceedings. FED. R. EVID. 1101(d)(3).

4

Finally, he contends that the facts as alleged in the search-warrant affidavit do not meet the probable-cause standard:

> When One man commits a series of robberies, and all evidence as well as witnesses point to him, after he is caught, it is not in officers [*sic*] good faith or there is no probable cause to run random names and investigate people that where [*sic*] never implicated in any robberies, especially when the lonely [*sic*] suspect was already apprehended . . . .

(Doc. #100 at 6). He also argues that probable cause does not exist because three weeks elapsed before he was implicated. *See* (*id*.) ("Cole mentioned Mr. Wright's name three weeks after the alleged robberies."). These arguments fail as a matter of law. Probable cause is a relatively low standard. It merely requires a finding that there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The court, therefore, recommends denying Mr. Wright's motion for a *Franks* hearing because he did not make a "substantial showing" that the affidavit contains intentionally or recklessly false statements or misleading omissions.

## B.     *Whether Mr. Wright was Unlawfully Arrested?*

The court next considers Mr. Wright's argument that he was unlawfully arrested. Relying on *Payton v. New York*, Mr. Wright contends that he was unlawfully arrested in his girlfriend's home because the arresting officers did not have an arrest warrant. *See* 445 U.S. 573, 576 (holding that the Fourth Amendment prohibits police officers from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest).

Mr. Wright's motion fails as a matter of law. In *Payton*, two police officers acted under a New York Statue and forcibly entered a suspect's home without a warrant to effect a felony arrest. *Id*. at 577. Although the suspect was not home, the officers obtained evidence linking him to a murder, which led to his conviction. *Id*. On appeal, the U.S. Supreme Court held that the New York Statute, which permitted

5

police officers to enter a home without a warrant to effect a felon arrest, was unconstitutional: "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id*. at 590.

*Payton* is inapplicable to Mr. Wright's case because he concedes that the Las Vegas Metropolitan Police Department entered his girlfriend's home pursuant to a search warrant. (Doc. #100 at 9–11). Once inside, the police officers learned that Mr. Wright is a felon and that a gun was inside the home. This, the government asserts, provided the officers with probable cause to arrest. (Doc. #120 at 13–14).

The court agrees. "There is probable cause for a warrantless arrest . . . if, under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." *United States v. Struckman*, 603 F.3d 731, 740 (9th Cir. 2010) (*United States v. Gonzales*, 749 F.2d 1329, 1337 (9th Cir. 1984)). *Payton* was not violated because the police did not enter the home without a warrant.

## C.     *Whether the Search Warrant was Sufficiently Particularized?*

Mr. Wright next asserts that the search warrant was not sufficiently particularized because it authorized the police to seize "[a]ny and all firearms, imitation firearms, or firearm parts, ammunition, firearm accessories, and/or documents related to firearm possession or ownership which tend to establish ownership or possession of firearms." *See* (Aff. #661 at 4). Mr. Wright contends that the search warrant should have been limited to firearms used during the alleged robberies.

The Fourth Amendment's particularity requirement has two aspects: particularity and breadth. *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993) (citation omitted). Particularity requires that the warrant clearly state what is sought. *Id*. That is, the warrant must supply enough information to guide and limit a police officer's judgment in selecting what to seize. *United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011). Breadth requires that each item that is seized be supported by probable cause. *Towne*,

6

997 F.2d at 544. That is, the warrant must not list items to be seized if there is no probable cause for its seizure. *Richards*, 659 F.3d at 537.

The particularity requirement was satisfied here. The affidavit supplied the officers with enough information to guide and limit his discretion: the officers were directed to seize all firearms. The warrant was also limited in breadth. Probable cause existed to seize all firearms because Mr. Wright is alleged to have participated in various armed robberies.

Mr. Wright complains that the warrant was overbroad because it did not direct the officers to seize only those firearms that were used during the alleged robberies. The court disagrees. Based on the search-warrant affidavit, there was probable cause to seize all firearms because there was probable cause to believe that any firearm found in 8102 Yellow Daisy Avenue may have been used during the alleged crimes. Mr. Wright's particularity argument is rooted in a sematic distinction that is of no consequence under the Fourth Amendment.

**D.** *Whether Mr. Wright is Entitled to an Evidentiary Hearing?*

Mr. Wright's motion presents a fourth question: whether he is entitled to an evidentiary hearing. "An evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (citing *United States v. Licavoli*, 604 F.2d 613, 621 (9th Cir. 1979)). Mr. Wright's motion did not overcome this standard. The material facts supporting a finding of probable cause to search and arrest are undisputed. Mr. Wright merely contends that the facts do not support a finding of probable cause under the prevailing law. For the reasons stated above, the court disagrees with this contention.

### E.     *Whether the Court Should Consider Mr. Wright's Supplemental Briefs?*

Mr. Wright's filings present a final question: whether the court should consider his supplemental briefs? On October 26, 2015, Mr. Wright filed two supplemental briefs to his motion to suppress. This was inappropriate. Local Rule 7-2 limits parties to a motion, response, and a reply. Nothing in the rule authorizes any documents beyond the motion, response, and reply "unless otherwise ordered by the Court." *Id*. Supplemental briefs or sur-replies are highly disfavored.

Nonetheless, the court has considered the arguments raised by Mr. Wright's surreplies and found them unpersuasive. He argues that he is entitled to a *Franks* hearing because the search-warrant affidavit did not inform the judicial officer that Mr. Wright had told the police that he does not live in 8102 Yellow Daisy Avenue. *See* (Doc. #138, #139). For the reasons stated above, this argument is insufficient to warrant a *Franks* hearing.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Brian Wright's Motion to Suppress (#100) be DENIED.

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist*., 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 28th day of October, 2015.

_____

CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE