**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>BRIAN WRIGHT,<br><br>                    Defendant. | 2:14-cr-00357-APG-VCF<br><br>**<u>Report and Recommendation</u>**<br><br>**<u>-and-</u>**<br><br>**<u>Order</u>**<br><br>MOTION FOR RETURN OF PROPERTY [ECF No. 424]; MOTION TO CONSOLIDATE OR ADJUDICATE MR. WRIGHT'S PRO SE MOTION TO RETURN PROPERTY [ECF No. 428] |

Before the Court is defendant Brian Wright's (1) motion for return of property and (2) motion to consolidate or adjudicate his pro se motion to return property. (ECF Nos. 424 and 428). The Court recommends granting the motion for return of property in part. (ECF No. 424). The Court also grants in part the motion to consolidate or adjudicate. (ECF No. 428).

I.       **Background and Initial Matters**

On February 10, 2017, law enforcement arrested Brian Wright pursuant to a petition to revoke his supervised release: he allegedly resided at 6255 West Arby Avenue, Building 19, #317 in Las Vegas, Nevada ("West Arby Property"). (See Joint-Statement at ECF No. 471 at 2). Wright is currently incarcerated and there are no pending charges against him. Wright filed the instant motion to return

1

property "pro se" (ECF No. 424) but his attorney Angela H. Dows filed a supplement to his motion (ECF No. 441). Attorney Dows also filed a motion to consolidate Wright's "pro se" motion and the supplement she filed on his behalf. (ECF No. 428). The government filed a response to both motions (ECF No. 444 and 468) and Dows filed a reply on Wright's behalf to both motions (ECF No. 445 and 472). The parties also filed a joint pre-hearing statement outlining the undisputed facts (ECF No. 471) and the Court held an evidentiary hearing on the motion (ECF No. 473).

### a. The Motion to Consolidate or Adjudicate

Wright filed his motion pro se and his attorney filed a supplement to his motion. The Court previously denied Wright's motion to dismiss counsel (ECF No. 466).  At the evidentiary hearing, the Court checked in with Wright to ensure that he still wanted Dows to argue the motion to return property and he said he did. The Court noted that although the two motions are not procedurally proper, the Court stated that it would consider the arguments both Wright's pro se motion and in the supplement. The Court thus grants Wright's motion to consolidate or adjudicate in part, only to the extent that it considers both the arguments that Wright brought in his "pro se" motion and the arguments Dows presented in the supplement as "one motion" for the purposes of the evidentiary hearing.

### b. The Property

Brian Wright alleges that law enforcement must return the following seized property from the West Arby Property to him: (1) $2,152 taken from Wright's front pocket; (2) $40,000 in cash taken from the mattress box spring; (3) the rings that law enforcement took off his fingers that he alleges are worth $30,000; (4) cell phones; and (5) a silver ring with apparent diamond stones inside the kitchen drawer. (ECF Nos. 424 at 2 and 474 at 7). It is undisputed that law enforcement seized $2,152.00 from Wright's person and $40,000 from inside a mattress box spring at the West Arby Property. (*Id*.) It is also undisputed that law enforcement removed rings and other items from Wright's person. (*Id.*)

The government argued at the hearing that it lacked notice regarding the silver ring in the drawer and the cell phones because Wright's initial motion did not ask for the return of these items. Wright admitted that the silver ring was his girlfriend's ring and did not belong to him, thus the Court will not consider any arguments about the silver ring in the drawer. At the hearing, Wright stated that only one of the cell phones belonged to him: A Galaxy 7 Edge. The Court gave the government one week from the hearing to confer with its agents and with Wright to determine whether the Galaxy Edge 7 will be returned to him and to notify the Court regarding the same. To date the government has not notified the Court regarding the status of this cell phone.

The government also argued that it did not seize the rings that law enforcement took off Wright's fingers because law enforcement left the rings at the residence.  The government stipulated at the hearing that it had no basis to continue to withhold the cash that is seized from Wright's front pocket. The Court thus recommends that the money from his front pocket be returned to him. At the hearing, the Court noted that Wright's FRCP 41(g) motion failed to make a showing to demonstrate that any of the alleged seizures constitutes an excessive fine pursuant to the Eighth Amendment.[1]

The Court thus considers whether the government must return the $40,000 in cash in the mattress box spring and the rings that the government allegedly took off Wright's fingers pursuant to Federal Rule of Criminal Procedure Rule 41(g).

### c.  The $40,000 in Cash in the Box Spring and the Rings on Wright's Fingers

Wright argues in his supplement that he was convicted of a single count of felon in possession of a firearm in 2016. (ECF No. 441 at 2). He argues that the FBI seized this property when it arrested him

---

[1]  The Excessive Fines Clause under the Eighth Amendment "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *United States v. Bajakajian*, 524 U.S. 321, 327-28 (1998).

on a petition for revocation of his supervised release based partly on an allegation that Wright was making money selling the services of prostitutes. (*Id*. at 3). Wright argues that search warrant listed items to be seized related to "pandering." (*Id*.) Wright argues that the government never pursued charges against Wright related to the alleged pandering. (*Id*.) Wright argues that his revocation proceeding is complete so all the property should be returned to him. (*Id*. at 9).

The government argued in response and at the hearing that it is not in possession of the rings that plaintiff alleges law enforcement took off his fingers because law enforcement left the rings at the West Arby Property. (ECF No. 444 at 1). The government also argued at the hearing that the $40,000 in cash hidden in the box spring was stolen from the Silverton Casino Sportsbook about three weeks earlier and presented evidence to show that the cash belongs to the Silverton. The parties do not dispute that the $40,000 hidden in the mattress was bound together with "gold bands."

One of the government's witnesses, Travis Kerr, a supervisor at CG Technology in 2017 at the Silverton Sportsbook, testified that on January 24, 2017 someone robbed him at gunpoint at the Silverton and Kerr put bonded stacks of money in a bag. Kerr testified that stacks of cash at the Silverton are organized with color-coded "bands" and that stacks of $10,000 were organized with "gold bands" that are unique to the Silverton casino. Kerr testified that reviewed the government's exhibit 3, which was a photograph of the $40,000 that the law enforcement seized that was wrapped in "gold bands" and he testified that he was 100% certain that the gold bands were the same ones he used at the Silverton. Kerr also provided a photograph of the bands from the Silverton (government's exhibit 4) and he testified that the bands were a match. The parties do not dispute that $40,000 found at the West Arby residence was wrapped in gold bands each band contained $10,000. (ECF No. 471 at 1).

The government argued in the supplement that the money would have been introduced at the trial of Wright's alleged co-conspirator, Matthew Cannon, who was charged in connection with the Silverton

robberies. (ECF No. 444 at 1). Cannon pled guilty to the conspiracy and has been sentenced.[2] See Wright's exhibit 500; see also *United States v. Matthew John Cannon, Jr.*, 2:19-cr-00025-RFB-VCF (ECF No. 104 at 18).

Another government witness, FBI Special Agent James Mollica testified that he photographed (1) the $40,000 with the gold bands and (2) a document with Wright's alleged co-conspirator Matthew Cannon's name on it at the West Arby Property. Nicholas Cappellari, an executive at CG Technology, testified that there was no record of anyone named Brian Keith Wright receiving any casino winnings above $3,000 dating back to 2016. The government's witness, special agent Colin Congo, testified at the hearing that law enforcement took rings off Wright's fingers, along with other items such as hair ties and a belt, and left them at the West Arby Property.

Wright argues in his reply that the government has the burden, not him, and it must show that it has a legitimate reason to retain the property. (ECF No. 445 at 8). Wright argued at the hearing that a large amount of cash is not contraband and that the $40,0000 is presumed to belong to him and should be returned. The government argued at the hearing that Wright does not have a right to the property if it is stolen property.

## II. Analysis and Remaining Issues

### a. Legal Standard

A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the return of said property. Fed. R. Crim. P. 41(g). "Rule 41(g) is concerned with

---

[2] The Court noted at the sentencing that Cannon had access to the West Arby Property and moved into the West Arby Property after Wright's arrest. The Court considered that, "this conspiracy involved a number of people [and after] Brian Wright was arrested on February 10th, 2017, this defendant, Mr. Cannon, basically took over the robbery crew." Wright's exhibit 500; see also *United States v. Matthew John Cannon, Jr.*, 2:19-cr-00025-RFB-VCF (ECF No. 104 at 10).

those whose property or privacy interests are impaired by the seizure." *U.S. v. Comprehensive Drug Testing, Inc*., 621 F.3d 1162, 1173 (9th Cir. 2010) (en banc); see also *Savoy v. United States*, 604 F.3d 929, 932 (6th Cir. 2010) (internal quotes omitted) ("The general rule is that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated.")

Whenever the property in question is no longer needed for evidentiary purposes, the burden of proof changes. *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987).  First, the defendant bringing a motion for return of property pursuant to Rule 41(g) bears the burden of demonstrating that he is "entitled to lawful possession of the property." *Id.* "[W]hen the property in question is no longer needed for evidentiary purposes, either because trial is complete, the defendant has pleaded guilty, or … the government has abandoned its investigation, the burden of proof changes … and the government has the burden of demonstrating that it has a legitimate reason to retain the property." *Id*. Only a "minimal showing such as testimony from the owner of the [property]…will be required to shift the burden to the government." *Id*., at 1369 n. 4.

For the government to carry its burden under Fed. R. Crim. P. 41(g), it needs to demonstrate that the items are "contraband or subject to forfeiture." *United States v. Gladding*, 775 F.3d 1149, 1152-53 (9th Cir. 2014).  The party who carries the burden need do so only by a preponderance of the evidence. *U.S. v. Matlock*, 415 U.S. 164, 177 n.14, 94 S. Ct. 988, 996 n.14, 39 L. Ed. 2d 242 (1974). The government can rebut presumption by showing that a legitimate reason for retaining the property that is reasonable under all the circumstances preponderates. *Gladding*, 775 F.3d at 1152-1154 (9th Cir. 2014) (citing Advisory Committee Note to 2009 Amendment on reasonableness standard applicable to computer files). The government may also overcome this presumption by demonstrating a cognizable claim of ownership or right to possession adverse to that of the defendant. *United States v. Fitzen,* 80 F.3d 387, 388 (9th Cir. 1996); see also *United States v. Palmer*, 565 F.2d 1063, 1064 n.1 (9th Cir. 1977)

("If possession of the things seized is unlawful, the state retains the things no matter how it got them.");
see also *Stancil v. United States*, 978 F.2d 716 (9th Cir. 1992), citing to *United States v. Van
Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir.1991)("[A 41(g)] motion should be denied, however, if
the movant is not entitled to lawful possession of the property or it is contraband.")

"A federal court has equitable authority, even after a criminal proceeding has ended, to order a
law enforcement agency to turn over property it has obtained during the case to the rightful owner or his
designee." *Henderson v. U.S*., 135 S. Ct. 1780, 1784, 191 L. Ed. 2d 874 (2015), citing *U.S. v. Martinez*,
241 F.3d 1329, 1330-1331 (11th Cir. 2001) (collecting cases). The government cannot return property it
does not possess, and a motion for the return of property must be denied if the government does not
possess the property. *U.S. v. Solis*, 108 F.3d 722 (7th Cir. 1997).

### b. The $40,000 in the Box Spring

Since the burden is on the government, now that the property is no longer needed for evidentiary
purposes, the Court considers whether the government has overcome the presumption that the $40,000
must be returned to Wright. The Court finds that the government has proved that the cash is contraband.
Law enforcement seized the cash less than a month after the January 2017 Silverton Sportsbook armed
robbery. The $40,000 was still wrapped in the gold bands from the Silverton Sportsbook. The Silverton
has no record of Brian Keith Wright receiving winnings. Wright's alleged co-conspirator Cannon pled
guilty to conspiracy, had access to the West Arby Property, and subsequently moved into the West Arby
Property.

The Court finds that the timing and the location of the cash (hidden in the box spring) all indicate
that the money is proceeds from one of the Silverton robberies. The Court also finds that Kerr's
testimony regarding the Silverton gold bands being identical to the bands on the $40,000 is credible and
supports a finding that the seized $40,000 came from the Silverton. Since possession of the proceeds

from the robbery is illegal, Wright does not have a right to the property.  The Court finds that the government has overcome the presumption and proven by a preponderance of the evidence that the $40,000 belongs to the Silverton Sportsbook and not to Wright. The government represented at the hearing that the $40,000 would be returned to the Silverton's insurance company if the Court determines that Wright is not the owner of the property. The government's evidence that the $40,000 is proceeds from the Silverton robbery is reasonable under all the circumstances and the government has proven a legitimate reason for retaining the $40,000 as contraband. The Court recommends denying Wright's request to return the $40,000 from the box spring to him.

### c.  The Rings on Wright's Fingers

The Court finds that special agent Congo's testimony, that law enforcement took the rings off Wright's fingers along with other personal items, and left them at the residence, is credible. The sentencing transcript shows that Cannon moved into the West Arby Property after Wright's arrest. If the rings are missing from the West Arby Property, it is likely because other people had access. The fact that other people had access to Wright's residence is of no fault to the government. The Court finds that the government never took the rings into its possession. Since the Court cannot return property to Wright that the government did not take into its possession, the Court recommends denying Wright's request for a return of the rings from his fingers.

ACCORDINGLY,

IT IS RECOMMENDED that defendant Brian Wright's motion (ECF No. 424) be GRANTED IN PART.

IT IS FURTHER RECOMMENDED that the government return the $2,152 taken from Wright's front pocket.

IT IS FURTHER RECOMMENDED that the government should not return the seized $40,000

from the box spring to Wright.

IT IS FURTHER RECOMMENDED that the Court should make a finding that the government cannot return the rings taken off Wright's fingers because law enforcement did not seize the rings.

IT IS ORDERED that the parties must file a joint status report on the docket by December 30, 2020 regarding the status of Wright's Galaxy 7 Edge cell phone and notifying the Court if there are any remaining issues to resolve.

IT IS FURTHER ORDERED that Wright's motion to consolidate or adjudicate (ECF No. 428) is GRANTED IN PART.

IT IS SO ORDERED AND RECOMMENDED.

DATED this 18th day of December 2020.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

9